# Illinois Official Reports

## Appellate Court

*Durica v. Commonwealth Edison Co.*, 2015 IL App (1st) 140076

| | |
|---|---|
| Appellate Court Caption | JOSEPH DURICA and MARTA DURICA, Plaintiffs-Appellants, v. COMMONWEALTH EDISON COMPANY and ABC PROFESSIONAL TREE SERVICES, INC., Defendants-Appellees. |
| District & No. | First District, First Division<br>Docket No. 1-14-0076 |
| Filed | March 30, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CH-39283; the Hon. Franklin U. Valderrama, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Goodman, Tavrov, Hardy & Johnson, LLC, of Chicago (Adam Goodman and Wesley Johnson, of counsel), for appellants.<br><br>Exelon Business Services Company, of Chicago (Nicole Nocera, of counsel) for appellee Commonwealth Edison Company.<br><br>Grant & Fanning, of Chicago (Gary W. Fresen, of counsel), for appellee ABC Professional Tree Service, Inc. |
| Panel | JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.<br>Justices Connors and Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1      Plaintiffs-appellants Joseph and Marta Durica (the Duricas) appeal from the circuit court's dismissal of their complaint pursuant to section 2-619(a)(1) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(1) (West 2010)). The circuit court concluded that the Illinois Commerce Commission (ICC) had exclusive jurisdiction over the Duricas' claims against defendants-appellees Commonwealth Edison Company (ComEd) and ABC Professional Tree Services, Inc. (ABC). The sole issue on appeal is whether the court erred in dismissing the Duricas' complaint.

¶ 2                         BACKGROUND

¶ 3      The Duricas are owners of property in LaGrange Park, Illinois, which abuts railroad tracks often used by freight trains. ComEd is a public utility company that, pursuant to an easement,[1] owns and maintains electrical lines on the Duricas' property that runs alongside the railroad tracks.

¶ 4      According to the Duricas, freight train traffic generates noise, dust, and unsightly views that interfere with their enjoyment of the property. To mitigate those problems, the Duricas grew vegetation on their property, including several 25-foot-tall pine trees. For many years, ComEd periodically trimmed these trees in order to prevent their interference with ComEd's power lines. That practice abruptly ended in September 2011, the Duricas' claim, when ComEd decided to completely remove the Duricas' trees and those of other property owners.

¶ 5      ComEd contracted with ABC to carry out the removal. According to the Duricas, on September 26, 2011, ABC asked Marta Durica for permission to remove the pine trees, but she refused. Nonetheless, the following day ABC proceeded to cut down the pine trees without authorization.

¶ 6      On October 24, 2012, the Duricas filed a complaint in the circuit court, which pleaded a putative class action on behalf of property owners whose vegetation had been removed by ComEd and ABC. The complaint alleged that ComEd's tree removal violated section 8-505.1 of the Public Utilities Act, which requires that an electrical utility "[f]ollow the most current tree care and maintenance standard practices" set forth by the American National Standards Institute and requires the utility to provide notice to property owners about such "vegetation management activities." 220 ILCS 5/8-505.1(a)(1), (2) (West 2010). However, the complaint acknowledged that "[t]he Illinois Commerce Commission has exclusive jurisdiction to hear complaints of violations of" that section. Thus, the complaint specifically pleaded that the Duricas did *not* seek to recover damages for violation of section 8-505.1 of the Public Utilities Act, but alleged that "the Defendants' violation of that statute illustrates their blatant disregard for the rights of property owners."

¶ 7      Instead of seeking damages on the basis of the Public Utilities Act, the Duricas' complaint went on to plead three separate causes of action against ComEd and ABC. Count I asserted a claim of trespass, alleging that ABC, on behalf of ComEd, had entered the Duricas' property

---

[1]ComEd argues on appeal that the terms of its easement expressly permits the tree removal complained of in this action, but that question was not the basis of the trial court's dismissal on jurisdictional grounds and the scope of the easement is not at issue in this appeal.

and removed trees without authorization. Count II asserted a claim for conversion, alleging that ABC on behalf of ComEd wrongfully assumed control, dominion, and ownership over the Duricas' trees. Finally, count III alleged that ABC and ComEd had violated the Wrongful Tree Cutting Act. See 740 ILCS 185/2 (West 2010) ("Any party found to have intentionally cut *** any timber or tree which he did not have the full legal right to cut or caused to be cut shall pay the owner of the timber or tree 3 times its stumpage value."). The complaint's prayer for relief requested a judgment for damages on behalf of the purported class of property owners.

¶ 8        On January 11, 2013, ComEd moved to dismiss the complaint on several grounds, only one of which is relevant to this appeal. Specifically, seeking dismissal pursuant to section 2-619(a)(1) of the Code of Civil Procedure, ComEd argued that only the ICC, not the circuit court, had subject matter jurisdiction over the Duricas' claims.[2] See 735 ILCS 5/2-619(a)(1) (West 2010). Notwithstanding the complaint's statement that the Duricas did not seek damages under section 8-505.1 of the Public Utilities Act, ComEd argued that the ICC's exclusive jurisdiction over the dispute was mandated by that statute's statement that "[t]he Commission shall have sole authority to investigate, issue, and hear complaints against the utility under this subsection (a)." 220 ILCS 5/8-505.1(a) (West 2010). ComEd argued that notwithstanding the Duricas' "artful pleading," the essence of the complaint was that "ComEd's vegetation management services were inadequate" in violation of section 8-505.1(a) and argued that only the ICC, not the court, could properly evaluate the adequacy of ComEd's vegetation management services.

¶ 9        ComEd's motion also relied on our supreme court's decision in *Sheffler v. Commonwealth Edison Co.*, 2011 IL 110166, which held that the ICC had exclusive jurisdiction where plaintiffs sought "compensation for ComEd's allegedly inadequate service, which directly relates to the Commission's rate-setting functions for electrical power services." *Id.* ¶ 53. ComEd argued that the ICC likewise had exclusive jurisdiction to decide the adequacy of vegetation management services, which ComEd claimed were "inextricably intertwined with whether ComEd's facilities are safe and operating properly."

¶ 10       The Duricas' response to the motion to dismiss argued that the ICC "does not have exclusive jurisdiction over everything that Com Ed does." The Duricas argued that, just as ICC would not have jurisdiction over "tort claims for car crashes ComEd causes or employee wage or discrimination claims brought against ComEd, it does not have jurisdiction over tort claims for ComEd's trespassing, conversion, or violations of the Illinois Tree Cutting Act." The Duricas contended that circuit court jurisdiction was supported by section 5-201 of the Public Utilities Act, which contemplates damage awards against a public utility for violation of the Public Utilities Act. 220 ILCS 5/5-201 (West 2010).

¶ 11       The Duricas further argued that the *Sheffler* decision did not mandate ICC jurisdiction, as that decision had recognized a distinction between claims for reparations that are subject to the exclusive jurisdiction of the ICC and claims for civil damages that may be heard in circuit court. The Duricas thus argued that the key question was whether their complaint sought "reparations" or civil damages, noting *Sheffler*'s statement that "a claim is for reparations when the essence of the claim is that a utility has charged too much for a service, while a claim

---

[2]ABC also filed a motion to dismiss on January 11, 2013, in which it adopted the arguments contained in ComEd's motion to dismiss as being equally applicable to ABC. ABC has similarly adopted ComEd's arguments on appeal.

- 3 -

is for civil damages when the essence of the complaint is that the utility has done something else to wrong the plaintiff." *Sheffler*, 2011 IL 110166, ¶ 42.

¶ 12   The Duricas acknowledged that section 8-505.1(a) gave the ICC jurisdiction over allegations of failure to comply with tree maintenance standards or the specified notice provisions, but argued that "nothing in [section 8-505.1] suggests that no other cause of action can be brought on the same facts." In support, the Duricas cited the last paragraph of section 8-505.1, which states that the statute does not "diminish or replace other civil or administrative remedies." 220 ILCS 5/8-505.1 (West 2010).

¶ 13   In its reply brief, ComEd maintained that, notwithstanding its "artful pleading" of tort claims, the essence of the complaint was "whether ComEd's execution of its vegetation management services was appropriate and necessary" and thus subject to ICC's jurisdiction under section 8-505.1. ComEd argued that as its vegetation management was "inextricably intertwined with ComEd's delivery of electricity," the ICC should apply its knowledge and expertise in overseeing the dispute.

¶ 14   On April 18, 2013, the Duricas moved to supplement their response with material from a proceeding pending before the ICC in a separate matter, *DeKing*, Ill. Com. Comm'n Docket 13-0186 (hereinafter, *DeKing*), that similarly involved a property owner (DeKing) seeking damages for ComEd's removal of trees. The Duricas submitted a transcript from the *DeKing* proceeding in which ComEd had argued that the ICC lacked authority to award damages to DeKing and that his "cause of action lies in the Circuit Court." The Duricas thus claimed ComEd had argued a contrary position on jurisdiction in the ICC from the stance it had taken in its motion to dismiss the Duricas' complaint.

¶ 15   Shortly thereafter, ComEd filed a reply in which it characterized its counsel's statements in the *DeKing* matter before the ICC as an "informal discussion" regarding "what remedies are available in the ICC." ComEd submitted its motion to dismiss the property owner's complaint in the *DeKing* matter, and claimed that its argument to the ICC regarding the availability of remedies in *DeKing* was consistent with ComEd's position in this lawsuit. In that submission to the ICC, ComEd argued that the ICC lacked the authority to award money damages to the property owner for the wrongful removal of his trees. However, citing the "sole authority" language of section 8-505.1(a), ComEd nonetheless maintained that the ICC had exclusive jurisdiction and that DeKing could not sue in circuit court. ComEd thus argued that the property owner in the *DeKing* matter was subject to the exclusive jurisdiction of the ICC, but could not recover any damages.

¶ 16   On July 9, 2013, the trial court issued a memorandum opinion and order granting ComEd's motion to dismiss the Duricas' complaint, agreeing that the Duricas' claims were within the exclusive jurisdiction of the ICC. Citing *Sheffler*, the trial court stated that the question of jurisdiction required examination of the role of the ICC, which "exists to maintain a balance between the rates charged by utilities and the services performed." The court quoted *Sheffler* that "in matters relating to services and rates of utilities[,] technical data and expert opinion, as well as complex technological and scientific data, make it essential that the matter be considered by a tribunal that is itself capable of passing upon complex data." (Internal quotation marks omitted.) *Sheffler*, 2011 IL 110166, ¶ 40.

¶ 17   The trial court recited the provisions of section 8-505.1(a) requiring utilities to follow national tree maintenance standards, to provide adequate notice of vegetation management activities, and the statement that the ICC "shall have sole authority to investigate, issue, and

hear complaints against the utility under this subsection (a)." 220 ILCS 5/8-505.1(a) (West 2010). Notably, however, the trial court did not refer to any other language contained in section 8-505.1. The trial court found that the "plain language" of section 8-505.1(a) gives the ICC "sole authority" over complaints for violation of that subsection. The court reasoned that the ICC had jurisdiction in this case as "[t]he gravamen of the Duricas' claim is that ComEd, in exercising its vegetation management services, injured the Duricas" by removing trees without notice in violation of section 8-505.1(a).

¶ 18    Although the complaint had pleaded additional causes of action, the court found "[t]he fact that the Duricas do not specifically allege a cause of action for violation of the [Public] Utilities Act [was] of no moment," because "[t]he essence of the Duricas' Complaint challenges the adequacy of ComEd's vegetation management services and as such, belongs before the ICC." The trial court reasoned that "ComEd's delivery of electrical service and vegetation management services are inextricably tied together" and that exercising jurisdiction would improperly place the court "in the position of assessing what constitutes appropriate vegetation management services." With respect to the Duricas' argument that ComEd had taken an inconsistent position in the *DeKing* matter before the ICC, the trial court found the argument "unpersuasive" and declined to address it. Concluding that the ICC had sole jurisdiction, the trial court dismissed the complaint.

¶ 19    The Duricas filed a motion to reconsider on August 7, 2013, which again referenced the *DeKing* matter in the ICC. The Duricas contended that shortly after the trial court's July 9 dismissal of the Duricas' complaint, the ICC had issued an order in the *DeKing* proceeding concluding that the property owner could sue ComEd for damages in the circuit court. The Duricas argued that this demonstrated that the ICC would not exercise jurisdiction over their claims, and thus they would be left "without a remedy" if the circuit court dismissed their complaint. The Duricas submitted a July 10, 2013 "Proposed Order" from the *DeKing* matter which stated that the ICC "ha[s] no general authority to fashion an award of damages," and that section 5-201 of the Public Utilities Act "establishes [DeKing's] remedy for monetary damages in the circuit court." *DeKing*, Ill. Com. Comm'n Docket 13-0186 (Proposed Order July 10, 2013). The ICC's proposed order stated that it would dismiss the *DeKing* petition because the ICC "does not have the statutory authority to grant the requested relief." *Id.*

¶ 20    ComEd's response to the Duricas' motion to reconsider explained that the *DeKing* order at issue was merely a proposed, not final, order, and that the *DeKing* matter remained pending. ComEd noted that on September 4, 2013, the ICC had issued another order in which the ICC specifically requested further briefing as to whether the ICC could award monetary damages. See *DeKing*, Ill. Com. Comm'n Docket 13-0186 (Interim Order Sept. 4, 2013). ComEd also argued that although the ICC in *DeKing* had questioned its ability to award certain remedies, that issue was distinct from whether the ICC had jurisdiction over such disputes.

¶ 21    Notably, the interim ICC order in *DeKing* referenced by ComEd not only requested briefing as to whether the ICC had authority to issue monetary damages or other remedies; it also requested briefing as to whether section 8-505.1 "strips the courts of jurisdiction over such claims for damages." *Id.* The ICC remarked that it found "seemingly contradictory language" in the statute (*id.*) comparing the final sentence of subsection (a) that "the Commission shall have sole authority to investigate, issue, and hear complaints" with the statute's subsequent statement that it "shall not in any way diminish or replace other civil or administrative remedies." 220 ILCS 5/8-505.1 (West 2010).

¶ 22    The Duricas filed a reply in support of their motion to reconsider, which acknowledged that the ICC had not issued a final order and the *DeKing* matter remained pending. Although the Duricas recognized the distinction between jurisdiction and remedies, they argued that if the ICC lacked authority to award damages, as ComEd had argued to the ICC, then they should be able to seek damages in circuit court. The Duricas urged that, absent more explicit language in the Public Utilities Act, it could not be implied that the legislature had intended to make property owners harmed by tree removal "a unique class of tort victims who are not entitled to money damages."

¶ 23    On December 3, 2013, the trial court denied the Duricas' motion to reconsider. The court rejected the Duricas' reliance on the ICC's statements in its nonfinal *DeKing* order, noting that the ICC had "not entered any order that the *DeKing* action was improperly brought before the ICC and instead belongs in the circuit court." Rather, the court maintained that it lacked jurisdiction due to "the plain language of the [Public] Utilities Act" giving the ICC "sole authority to investigate, issue, and hear complaints against the utility under subsection (a)." See 220 ILCS 5/8-505.1(a) (West 2010). The trial court reiterated its conclusion that "[t]he essence of the Duricas' Complaint challenges ComEd's vegetation management services and as such, exclusive jurisdiction lies with the ICC."

¶ 24    The Duricas filed a notice of appeal on January 2, 2014, within 30 days of the final order. Thus we have jurisdiction. See Ill. S. Ct. R. 303(a) (eff. May 30, 2008).

¶ 25                                              ANALYSIS

¶ 26    The sole question on appeal is whether the trial court erred in dismissing the Duricas' complaint on the basis that the claims fell within the ICC's exclusive jurisdiction. As the complaint was dismissed pursuant to section 2-619(a)(1) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(1) (West 2010)), we review the trial court's decision *de novo*. *Sheffler*, 2011 IL 110166, ¶ 23. Our review of the trial court's interpretation of the Public Utilities Act is also *de novo*. See *Price v. Philip Morris, Inc.*, 219 Ill. 2d 182, 235 (2005) ("Statutory construction is a question of law, subject to *de novo* review.").

¶ 27    We turn to the relevant statutory provisions. "The Public Utilities Act creates the Illinois Commerce Commission and charges it with 'general supervision of all public utilities.' " *State of Illinois ex rel. Pusateri v. Peoples Gas Light & Coke Co.*, 2014 IL 116844, ¶ 12 (quoting 220 ILCS 5/2-101, 4-101 (West 2008)). Section 8-505.1 of the Public Utilities Act governs "Non-emergency vegetation management activities" by an electric public utility such as ComEd. 220 ILCS 5/8-505.1 (West 2010). In particular, section 8-505.1(a)(1) obligates an electric public utility to "[f]ollow the most current tree care and maintenance standard practices set forth in ANSI A300 published by the American National Standards Institute and the most current applicable Occupational Safety and Health Administration regulations regarding worker safety." 220 ILCS 5/8-505.1(a)(1) (West 2010). Section 8-505.1(a)(2) obligates a utility to "[p]rovide direct notice of vegetation management activities no less than 21 days nor more than 90 days before the activities begin," and specifies the accompanying information that must be provided to customers and property owners. 220 ILCS 5/8-505.1(a)(2) (West 2010). Following these notice requirements, the final sentence of section 8-505.1(a) states: "The Commission shall have sole authority to investigate, issue, and hear complaints against the utility under this subsection (a)." 220 ILCS 5/8-505.1(a) (West 2010).

¶ 28        Following subsections (b), (c), and (d), which are not relevant to this appeal, section 8-505.1 concludes with the following paragraph:

> "The provisions of this Section shall not in any way diminish or replace other civil or administrative remedies available to a customer or class of customers or a property owner or class of property owners under this Act. This Section does not alter the jurisdiction of the Illinois Commerce Commission in any manner except to obligate the Commission to investigate, issue, and hear complaints against an electric public utility as provided in subsection (a)(3) and to hear and resolve disputed matters brought to it as provided in this subsection. Vegetation management activities by an electric public utility shall not alter, trespass upon, or limit the rights of any property owner." 220 ILCS 5/8-505.1 (West 2010).

¶ 29        Distinct from the "vegetation management activities" provisions of section 8-505.1, the Public Utilities Act elsewhere provides that a utility may be subject to claims for damages in circuit court. Specifically, section 5-201 provides:

> "In case any public utility shall do, cause to be done or permit to be done any act, matter or thing prohibited, forbidden or declared to be unlawful, or shall omit to do any act, matter or thing required to be done either by any provisions of this Act or any rule, regulation, order or decision of the Commission, issued under authority of this Act, the public utility shall be liable to the persons or corporations affected thereby for all loss, damages or injury caused thereby or resulting therefrom, and if the court shall find that the act or omission was wilful, the court may in addition to the actual damages, award damages for the sake of example and by the way of punishment. An action to recover for such loss, damage or injury may be brought in the circuit court by any person or corporation." 220 ILCS 5/5-201 (West 2010).

¶ 30        The trial court's decision on ComEd's motion to dismiss acknowledged section 5-201, but nevertheless held that the ICC had jurisdiction over this matter pursuant to section 8-505.1's provisions regarding a utility's "vegetation management activities." 220 ILCS 5/8-505.1 (West 2010). The trial court relied largely on the statement in section 8-505.1(a) that "[t]he Commission shall have sole authority to investigate, issue, and hear complaints" under that subsection. 220 ILCS 5/8-505.1(a) (West 2010). The trial court found that the "plain language" of this provision brought claims regarding vegetation management services within the sole jurisdiction of the ICC. Likewise, ComEd argues on appeal that the "sole authority" language is unambiguous and requires that "the ICC alone has jurisdiction to hear complaints about ComEd's non-emergency vegetation management activities."

¶ 31        In our view, however, the trial court erred in its analysis of the Public Utilities Act because it failed to consider section 8-505.1's concluding paragraph, particularly the section that states: "The provisions of this Section *shall not in any way diminish or replace other civil or administrative remedies* available to a customer or class of customers or a property owner or class of property owners under this Act." (Emphasis added.) 220 ILCS 5/8-505.1 (West 2010). ComEd's appellate brief also fails to acknowledge this portion of the statute, notwithstanding that this language is clearly indicative of the legislative intent which is contrary to ComEd's position. This statutory language, particularly when read in conjunction with section 5-201's recognition of circuit court jurisdiction over claims for damages, leads us to conclude that, notwithstanding the earlier "sole authority" clause, section 8-505.1 of the Public Utilities Act does *not* preclude property owners from pursuing other claims in circuit court arising from a

utility's "vegetation management activities." Thus, we conclude that the trial court erred in dismissing the Duricas' complaint due to lack of jurisdiction.

¶ 32    We recognize that the clause giving "sole authority" to the ICC arguably conflicts with the subsequent statement that section 8-505.1 "shall not in any way diminish or replace other civil or administrative remedies." 220 ILCS 5/8-505.1 (West 2010). That is, if the "sole authority" clause was interpreted broadly as giving the ICC exclusive jurisdiction over any and all claims arising from conduct that constitutes a violation of section 8-505.1, it could conflict with the statute's subsequent recognition that "other civil or administrative remedies" may be pursued. 220 ILCS 5/8-505.1 (West 2010). However, recognizing the principle of statutory construction that all provisions are to be given effect if reasonably possible, we will interpret the statute in a manner that reconciles any apparent conflicts. See *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 422 (2002) (recognizing that in statutory interpretation "each section should be construed with every other part or section of the statute to produce a harmonious whole" such that "no term is rendered superfluous or meaningless"); *Ferguson v. McKenzie*, 202 Ill. 2d 304, 311 (2001) ("Where there is an alleged conflict between two statutes, a court has a duty to interpret those statutes in a manner that avoids an inconsistency and gives effect to both statutes, where such an interpretation is reasonably possible.").

¶ 33    In this case, the seemingly contradictory statements within section 8-505.1 can each be given effect by recognizing that conduct which violates the statute may also give rise to independent claims, such as the common law tort claims alleged in this case. That is, the ICC is expressly granted "sole authority" over complaints that the specific requirements of section 8-505.1(a) have been violated–for example, that a utility has not followed national tree maintenance standards or failed to give proper notice of its vegetation management activity. 220 ILCS 5/8-505.1(a) (West 2010). However, the ICC's jurisdiction over those complaints does not "diminish or replace" a plaintiffs' right to pursue "other civil or administrative remedies," such as a tort lawsuit, that may be warranted by the utility's conduct. 220 ILCS 5/8-505.1 (West 2010). This interpretation is supported by the final statement in section 8-505.1's concluding paragraph that "[v]egetation management activities by an electric public utility shall not alter, *trespass upon*, or limit the rights of any property owner." (Emphasis added.) 220 ILCS 5/8-505.1 (West 2010). That language indicates that in drafting section 8-505.1, the legislature sought to *preserve*, rather than *preempt*, a property's owner's option to pursue independent claims against a public utility where vegetation management activity harms private property rights.

¶ 34    In its orders granting ComEd's motion to dismiss and denying the Duricas' motion to reconsider, the trial court simply failed to acknowledge section 8-505.1's concluding paragraph whatsoever. Thus, the court did not consider the statutory language explicitly preserving "other civil or administrative remedies," notwithstanding the prior statement giving the ICC "sole authority" over complaints for violation of section 8-505.1(a). As a result of this oversight, we believe the trial court erred in concluding that section 8-505.1 precludes the circuit court from exercising jurisdiction over *any* causes of action arising out of ComEd's vegetation management activities.

¶ 35    Furthermore, to the extent the trial court relied on our supreme court's decision in *Sheffler v. Commonwealth Edison Co.*, 2011 IL 110166, our analysis of that decision leads us to conclude that its holding does not bar the circuit court's jurisdiction over the Duricas' claims. The plaintiffs in *Sheffler* alleged damages as a result of power outages to their homes following

- 8 -

severe storms. *Id.* ¶¶ 36-37. Among other allegations, the *Scheffler* plaintiffs claimed ComEd had negligently failed to restore power to their homes in a timely manner and had failed to prevent or adequately prepare for such power outages. *Id.* ¶ 52. The appellate court had concluded that the ICC rather than the circuit court had jurisdiction because the plaintiffs' claims for damages were "predicated on allegations that ComEd was not providing adequate service under the [Public Utilities] Act." *Id.* ¶ 18. As the plaintiffs alleged that ComEd's level of service was substandard, the appellate court found the claims were "directly relate[d] to the Commission's rate-setting functions for electrical power services, which raised a regulatory question of how ComEd should recover the costs of raising the level of service it provides." *Id.* ¶ 24. The appellate court reasoned that "[a]llowing plaintiffs' claims to proceed would place the circuit court in the position of having to determine what constitutes adequate service" which was "a determination within the Commission's jurisdiction pertaining to rates." *Id.* ¶ 25.

¶ 36    In affirming the appellate court, our supreme court first explained that the role of the ICC "is to determine that a utility's rates are just and reasonable and that its services are adequate." *Id.* ¶ 40. The court recognized that section 9-252 of the Public Utilities Act established the ICC's "exclusive jurisdiction over rates." *Id.* ¶ 41. That section of the Public Utilities Act provides that if a utility "has charged an excessive or unjustly discriminatory amount for its product, commodity or service, the Commission may order that the public utility make due reparation to the complainant therefor." 220 ILCS 5/9-252 (West 2010). The *Sheffler* court thus explained that "if a claim is for reparations, jurisdiction is in the Commission, while jurisdiction of an action for civil damages lies in the circuit court." *Sheffler*, 2011 IL 110166, ¶ 42. The court elaborated that "a claim is for reparations when the essence of the claim is that a utility has charged too much for a service, while a claim is for civil damages when the essence of the complaint is that the utility has done something else to wrong the plaintiff." *Id.* (citing *Flournoy v. Ameritech*, 351 Ill. App. 3d 583, 585 (2004)). The *Sheffler* court further observed that "courts focus on the nature of the relief sought rather than the basis for seeking relief in determining whether an action falls within the jurisdiction of the Commission." *Id.* ¶ 50.

¶ 37    Under *Sheffler*'s facts, our supreme court concluded that, although the plaintiffs' complaint purported to seek civil damages, "the relief sought by plaintiffs goes directly to ComEd's service and infrastructure, which is within the Commission's original jurisdiction." *Id.* ¶ 50. The court explained that "the nature of the relief sought by plaintiffs is compensation for ComEd's allegedly inadequate service, which directly relates to the Commission's rate-setting functions," as "rates and service are inextricably tied together." *Id.* ¶ 53. The court went on to hold that "complaints concerning the adequacy of ComEd's services fall within the jurisdiction of the Commission and fall within the rubric of 'reparations.' " *Id.* ¶ 55. Our supreme court has recently reaffirmed *Sheffler*'s distinction between claims for civil damages and claims for reparations subject to ICC jurisdiction. *State of Illinois ex rel. Pusateri v. Peoples Gas Light & Coke Co.*, 2014 IL 116844, ¶¶ 18-19 (holding that suit under False Claims Act (740 ILCS 174/1 *et seq.* (West 2008)) that utility "used fraudulent means to get the State (and others) to pay too much for natural gas" sought reparations and thus was subject to ICC's exclusive jurisdiction).

¶ 38    Unlike the trial court, we do not believe that *Sheffler*'s holding mandates ICC jurisdiction over this action. First, we note that the statutory basis of ComEd's argument for ICC jurisdiction in this case is different than that at issue in *Sheffler*. In *Sheffler*, the discussion of

whether plaintiffs' claims were within the ICC's jurisdiction followed the recognition that section 9-252 of the Public Utilities Act gives the ICC exclusive jurisdiction over claims of excessive rates and empowers the ICC to order a utility to "make due reparation to the complainant therefor." 220 ILCS 5/9-252 (West 2010). From that proposition, the *Sheffler* court reasoned that customer complaints of inadequate service implicate ICC jurisdiction because "rates and service are inextricably tied together." *Sheffler*, 2011 IL 110166, ¶ 53 ("[I]t is essential that the Commission consider matters relating to services and rates of utilities, given the complex data underlying those matters.").

¶ 39    In this case, however, the trial court did not find that ICC jurisdiction arose from section 9-252; likewise, the court did not suggest that ComEd's vegetation management activity relates to the ICC's rate-setting functions or that damages sought for wrongful tree removal constitute "reparations." Rather, relying on section 8-505.1(a)'s "sole authority" clause and *Sheffler*, the trial court reasoned that the ICC had jurisdiction because it found that "delivery of electrical service and vegetation management services are inextricably tied together." ComEd likewise asserts on appeal that its vegetation management activities are "inextricably intertwined with whether ComEd's facilities are safe and operating properly."

¶ 40    Although we recognize *Sheffler*'s holding that claims of inadequate electrical service fall within the ICC's jurisdiction, we do not find that the Duricas' allegations of wrongful tree removal fall within the scope of "reparations" claims within the ICC's exclusive jurisdiction. Rather, we find that the Duricas' complaint states a claim for civil damages that is properly maintained in the circuit court. See *Sheffler*, 2011 IL 110166, ¶ 42 ("[A] claim is for reparations when the essence of the claim is that a utility has charged too much *** while a claim is for civil damages when the essence of the complaint is that the utility has done something else to wrong the plaintiff.").

¶ 41    There is a significant difference in the nature of the claims in *Sheffler* from those alleged here. The allegations in *Sheffler* were directly related to ComEd's failure to provide adequate service to the plaintiffs, as ComEd's customers. Yet the allegations here do not arise from the relationship between ComEd as a provider of electricity and the Duricas as customers; thus they do not implicate the ICC's role of overseeing rates. That is, the Duricas do not allege that they were overcharged by ComEd or that ComEd failed to provide adequate electricity services. Rather, they allege that ComEd trespassed upon their property and seek to recover civil damages in tort, not reparations for rate overcharges or inadequate service. Thus, the holding of *Sheffler* that the ICC has jurisdiction over complaints seeking reparations for inadequate service does not compel exclusive ICC jurisdiction in this case.

¶ 42    The trial court found that *Sheffler* applied because the "essence of the Duricas' Complaint challenges the adequacy of ComEd's vegetation management services." Yet we disagree with the trial court's conclusion that ComEd's vegetation management activity, under these facts, is so "inextricably tied" to ComEd's delivery of electricity, that a property owner injured by such activity is barred from asserting any related claims in the circuit court. In our view, this is an overbroad application of *Sheffler*. The trial court's holding suggests that ICC jurisdiction extends to claims arising from *any* activity relating to ComEd's delivery of electricity. As a practical matter, most, if not all, of ComEd's activities could be found to have some relation to the overall goal of providing electricity to customers. However, we do not believe the legislature intended to create such a broad scope of actions within the ICC's exclusive jurisdiction in drafting the Public Utilities Act. To the contrary, such a broad view of the scope

of the ICC's jurisdiction directly conflicts with the legislative intent expressed in section 8-505.1's recognition of "other civil or administrative remedies" (220 ILCS 5/8-505.1 (West 2010)) as well as section 5-201, which explicitly permits actions for damages against a public utility in circuit court. 220 ILCS 5/5-201 (West 2010).

¶ 43    Our precedent also supports circuit court jurisdiction over claims unrelated to reparations for inadequate service. For example, in a post-*Sheffler* decision, we held that a consumer lawsuit alleging that a utility engaged in improper debt collection activities had "nothing to do with the utility's infrastructure, adequacy of service, or rate structure" and thus the circuit court, not the ICC, had jurisdiction. See *Thomas v. Peoples Gas Light & Coke Co.*, 2011 IL App (1st) 102868, ¶ 22 (finding "[t]he issue raised in [plaintiff's] claim is not committed to the Commission's expertise," but was "committed to the jurisdiction of the circuit court under section 5-201 of the [Public Utilities] Act"). In addition, the Third District of our court previously held that the circuit court had jurisdiction over an inmate's claim of fraud and negligence against a telephone service provider, notwithstanding the defendant's assertion that the ICC had exclusive jurisdiction, because the inmate sought civil damages rather than reparations. *Flournoy v. Ameritech*, 351 Ill. App. 3d 583, 585-86 (2004). *Flournoy* was in fact approvingly cited by our supreme court in *Sheffler*. See *Sheffler*, 2011 IL 110166, ¶ 42. Moreover, albeit in a pre-*Sheffler* decision that did not explicitly address the issue of jurisdiction, this court found ComEd was liable to property owners in a factually analogous case to this, seeking damages for ComEd's removal of plaintiffs' vegetation. See *Duresa v. Commonwealth Edison Co.*, 348 Ill. App. 3d 90 (2004).

¶ 44    Furthermore, we agree with the Duricas' argument that section 8-505.1 of the Public Utilities Act does not suggest any legislative intent to deprive tort victims of a common law remedy against ComEd. We recognize that "[r]epeal or preemption of an existing common-law remedy by implication is not favored." *Callahan v. Edgewater Care & Rehabilitation Center, Inc.*, 374 Ill. App. 3d 630, 634 (2007). "A legislative intent to abrogate the common law must be clearly and plainly expressed, and such an intent will not be presumed from ambiguous or doubtful language." *Maksimovic v. Tsogalis*, 177 Ill. 2d 511, 518 (1997). "Illinois courts have limited all manner of statutes in derogation of the common law to their express language, in order to effect the least–rather than the most–change in the common law." *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 69 (2004). Thus, although section 8-505.1(a) states that the ICC has "sole authority" to hear complaints for violation of that portion of the Public Utilities Act, we will not presume that the legislature additionally intended to repeal or preempt property owners' rights to assert independent tort claims arising from the same conduct, or to preclude the common law remedy of monetary damages which would otherwise be available. This conclusion is all the more apparent in view of section 8-505.1's statement that it does *not* "diminish or replace other civil or administrative remedies" (220 ILCS 5/8-505.1 (West 2010)), as well as section 5-201's recognition that damages may be sought against public utilities in circuit court (220 ILCS 5/5-201 (West 2010)).

¶ 45    For the foregoing reasons, we reverse the judgment of the circuit court of Cook County dismissing the Duricas' complaint pursuant to section 2-619 of the Code of Civil Procedure and remand the case for further proceedings consistent with this opinion.

¶ 46    Reversed and remanded.