NOTICE
This Order was filed under Supreme
Court Rule 23 and is not precedent
except in the limited circumstances
allowed under Rule 23(e)(1).

2021 IL App (4th) 200283-U

NO. 4-20-0283

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 8, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| VB APARTMENTS LLC, | ) | Appeal from |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | McLean County |
| AMEREN ILLINOIS COMPANY, | ) | No. 14L87 |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Paul G. Lawrence, |
| | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Presiding Justice Knecht and Justice Turner concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, concluding the trial court properly granted
defendant's motion for summary judgment.

¶ 2    In January 2015, plaintiff, VB Apartments, LLC, filed an amended complaint
pursuant to the Public Utilities Act (Act) (220 ILCS 5/1-101 *et seq.* (West 2014)).  The
complaint alleged defendant, Ameren Illinois Company, negligently caused plaintiff damages in
excess of $50,000.  In October 2018, defendant filed a motion for summary judgment.  In
February 2020, the trial court granted the motion for summary judgment.  In June 2020, the court
denied plaintiff's motion to reconsider.

¶ 3    Plaintiff appeals, arguing the trial court erred by granting defendant's motion for
summary judgment where (1) defendant's tariff did not bar plaintiff's claim; (2) the trial court
had jurisdiction over plaintiff's claim, not the Illinois Commerce Commission (Commission);

and (3) plaintiff's claim was not barred by the economic-loss doctrine set forth in *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69, 435 N.E.2d 443 (1982). For the following reasons, we affirm the trial court's judgment.

¶ 4                                    I. BACKGROUND

¶ 5              In January 2015, plaintiff filed an amended complaint pursuant to the Act (220 ILCS 5/1-101 *et seq.* (West 2014)). The complaint alleged plaintiff installed a main breaker designed to be the point of entry of electricity into a multiple-family residential property in Normal, Illinois. An electrical contractor hired by plaintiff extended wire from the main breaker to a transformer pole owned by defendant. According to the complaint, the connection of the wire to the transformer was defendant's sole and exclusive responsibility. The complaint alleged defendant "negligently and carelessly utilized equipment and a methodology which was violative of the provisions of the National Electric Safety Code ***, and as a direct and proximate result of the negligent and illegal connection, naturally accumulating moisture was allowed to intrude into the breaker, causing it to be damaged and resulting in disruptions of power service to the improvements owned by [p]laintiff."

¶ 6              The record establishes the following undisputed relevant facts. Plaintiff contacted defendant to set up electrical service prior to the construction of its apartment building. Defendant installed a utility pole and built a transformer bank. Plaintiff's electrician installed a main breaker and extended service conductors to the utility pole. Defendant connected the service conductors to the transformer bank. Martin Behrens, defendant's engineering supervisor, stated the termination (where the service conductor connected to the transformer) was consistent with the way defendant installed several other conductors. According to Behrens, at the termination, "the lug actually squeezed the cable down to compress it to the point where there

was virtually no, if any, space around the stranding of the conductors within the cable." Plaintiff alleged the exposed ends of the conductors allowed water to wick through the conductors, ultimately contacting and damaging the electronic breaker. Behrens ultimately "suggested covering the connections at the transformer[.]" At the same time the covers were installed, "butt splices *** were installed on the service entrance conductors at the main switch" that could have stopped the migration of water into the main switch.

¶ 7    The discharge of water into the breaker damaged the breaker and the conductors. The damage to plaintiff's equipment prevented the breaker from distributing electricity to the apartment building 57 times between July 2012 and May 2013. Plaintiff alleged it replaced the breaker at least three times, replaced the water-logged conductors, and spent more than 600 hours tending to the damage.

¶ 8    In October 2018, defendant filed a motion for summary judgment. The motion for summary judgment argued plaintiff's claim was (1) within the exclusive jurisdiction of the Commission, (2) barred by the utility tariff, and (3) barred by the economic-loss doctrine. The tariff included a limitation of liability provision, requiring defendant to "use reasonable diligence in furnishing uninterrupted and regular [e]lectric [s]ervice, but will in no case be liable for interruptions, deficiencies[,] or imperfections of said service, except to the extent of a *pro rata* reduction of the monthly charges." In February 2020, the trial court granted defendant's motion for summary judgment in its entirety.

¶ 9    In March 2020, plaintiff filed a motion to reconsider, arguing there was new evidence and the trial court misapplied the law in its ruling. The trial court denied the motion to reconsider. In making its ruling, the court relied on *Sheffler v. Commonwealth Edison Co.*, 2011 IL 110166, 955 N.E.2d 1110, to determine the Commission had jurisdiction over plaintiff's

claims of inadequate service.  The court concluded the utility tariff barred plaintiff's claims because plaintiff sought to recover for interruptions in service, which defendant was only liable for to the extent of a *pro rata* reduction in charges.  Finally, the court determined the economic-loss doctrine applied to the provision of electrical services and barred plaintiff's claim because it related to a defeated commercial expectation.

¶ 10   This appeal followed.

¶ 11          II. ANALYSIS

¶ 12   On appeal, plaintiff argues the trial court erred by granting defendant's motion for summary judgment where (1) defendant's tariff did not bar plaintiff's claim; (2) the trial court had jurisdiction over plaintiff's claim, not the Commission; and (3) plaintiff's claim was not barred by the economic-loss doctrine set forth in *Moorman*, 91 Ill. 2d 69.

¶ 13   Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits establish no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *Purtill v. Hess*, 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871 (1986).  "While use of the summary judgment procedure is to be encouraged as an aid in the expeditious disposition of a lawsuit [citation], it is a drastic means of disposing of litigation and therefore should be allowed only when the right of the moving party is clear and free from doubt."  *Id.*  In ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party.  *Boldini v. Owens Corning*, 318 Ill. App. 3d 1167, 1170, 744 N.E.2d 370, 372 (2001).  We review *de novo* an order granting summary judgment.  *Id.*

¶ 14        A. Utility Tariff

¶ 15        Plaintiff first asserts the trial court erred by granting summary judgment based on defendant's utility tariff. Defendant contends the court properly determined the utility tariff barred plaintiff's claim.

¶ 16        "A tariff is a public document setting forth services being offered, the rates and charges with respect to services, and the governing rules, regulations, and practices relating to those services." *Sheffler*, 2011 IL 110166, ¶ 28. When a tariff is filed with the Commission, it binds the utility and the customer and governs their relationship. *Id.* A tariff approved by the Commission becomes the law and has the force and effect of a statute. *Id.* "Tariff provisions are usually referred to as liability limitations, which reflect the status of public utilities as regulated monopolies whose operations are subject to extensive restrictions, the requirements of uniform, nondiscriminatory rates, and the goal of universal service, achieved through the preservation of utility prices that virtually all customers can afford." *Id.* ¶ 29. A strictly regulated public utility's liability should be defined and limited so it may provide service at reasonable rates, which is in part dependent on a rule limiting liability. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 57, 809 N.E.2d 1248, 1264 (2004).

¶ 17        Here, the utility tariff contained a limitation of liability that provides, in part, as follows:

> "The Company will use reasonable diligence in furnishing uninterrupted and regular [e]lectric [s]ervice, but will in no case be liable for interruptions, deficiencies[,] or imperfections of said service, except to the extent of a *pro rata* reduction of the monthly charges.

- 5 -

The Company does not guarantee uninterrupted service and shall not be liable for any damages, direct or otherwise, which the Customer may sustain by reason of any failure or interruption of service, increase or decrease in energy voltage or change in character of energy, whether caused by accidents, repairs or other causes except when caused by gross negligence on its part; however, in no event shall the Company be liable for any loss by Customer of production, revenues[,] or profits or for any consequential damages whatsoever on account of any failure or interruption of service or increase or decrease in energy voltage or change in character of energy; nor shall the Company be liable for damages that may be incurred by the use of electrical appliances or the presence of the Company's property on the Customer's Premises.  Company is not responsible or liable for damage to Customer's motor or any other equipment or property caused by conditions not due to negligence of Company.  ***

***

The Company shall not be responsible nor liable for electric energy from and after the point at which it first passes to the wires or other equipment owned or controlled by the Customer, and the Customer shall protect and save harmless Company for all claims for injury or damage to Persons or property occurring beyond said point, except where injury or damage shall be shown

- 6 -

to have been occasioned solely by the negligence of the Company."

¶ 18    Plaintiff argues its claim is not barred by the tariff because the claims sound in negligence and seek recovery for damages to its property. Defendant contends plaintiff ignores the *pro rata* reduction clause, which limits defendant's liability because plaintiff seeks damages for interruptions in electrical service.

¶ 19    Plaintiff seeks damages for the time its officers spent responding to interruptions in service, meetings concerning the outages and resetting of power, charges from the electrician responding to outages, charges for displacement of tenants during outages, and credits to tenants for food spoilage due to outages. The utility tariff limits defendant's liability for service interruptions to a reduced *pro rata* monthly service charge. Moreover, the clause plaintiff selectively cites ("Company is not responsible or liable for damages to Customer's motor or any other equipment or property not due to the negligence of Company") ignores a preceding clause which provides:

> "The Company does not guarantee uninterrupted service and shall not be liable for any damages, direct or otherwise, which the Customer may sustain by reason of any failure or interruption of service, increase or decrease in energy voltage or change in character of energy, whether caused by accidents, repairs or other causes except when caused by gross negligence on its part; *however, in no event shall the Company be liable for any loss by Customer of production, revenues[,] or profits or for any consequential damages whatsoever on account of any failure or*

*interruption of service* or increase or decrease in energy voltage or

change in character of energy ***."  (Emphasis added.)

The utility tariff bars plaintiff's claims for damages for its expenditures responding to service

interruptions, even if the claims are framed in terms of negligence.  Accordingly, we conclude

the trial court did not err in granting defendant's motion for summary judgment on this basis.

¶ 20                                    B. Jurisdiction

¶ 21            Plaintiff next asserts the trial court erred by granting summary judgment based on

its conclusion the Commission had exclusive jurisdiction over plaintiff's claim.  Defendant

contends the court properly determined the Commission had exclusive jurisdiction over

plaintiff's claims for reparations.

¶ 22            The Act allows claims for civil damages to be filed in the circuit court:

          "In case any public utility shall do, cause to be done or

          permit to be done any act, matter or thing prohibited, forbidden or

          declared to be unlawful, or shall omit to do any act, matter or thing

          required to be done either by any provisions of this Act or any rule,

          regulation, order or decision of the Commission, issued under

          authority of this Act, the public utility shall be liable to the persons

          or corporations affected thereby for all loss, damages or injury

          caused thereby or resulting therefrom, and if the court shall find

          that the act or omission was wilful, the court may in addition to the

          actual damages, award damages for the sake of example and by the

          way of punishment.  An action to recover for such loss, damage or

- 8 -

injury may be brought in the circuit court by any person or corporation." 220 ILCS 5/5-201 (West 2014). However, the Commission has jurisdiction over claims for reparations. *Sheffler*, 2011 IL 110166, ¶ 42. "[A] claim is for reparations when the essence of the claim is that a utility has charged too much for a service, while a claim is for civil damages when the essence of the complaint is that the utility has done something else to wrong the plaintiff." *Id.* Complaints concerning the adequacy of a utility's service fall within the Commission's jurisdiction and within the rubric of "reparations." *Id.* ¶ 55.

¶ 23            In *Sheffler*, the plaintiffs brought a claim under the Act for damages resulting from the utility's alleged negligence. *Id.* ¶ 5. The *Sheffler* plaintiffs sought compensatory damages for "personal injury, property damage and financial damages, including the loss of use of property, and costs of repair and replacement of property." *Id.* ¶ 44. The plaintiffs claimed the electric company had a duty to provide continuous power and the utility was negligent due to an inadequate process to warn customers of a power outage, a failure to timely restore power, and a deficient infrastructure. *Id.* ¶¶ 51-52. The Illinois Supreme Court concluded "the nature of the relief sought by plaintiffs is compensation for ComEd's allegedly inadequate service, which directly relates to the Commission's rate-setting functions for electrical power services." *Id.* ¶ 53.

¶ 24            Plaintiff attempts to distinguish *Sheffler* by arguing defendant in this case always provided power but its negligent design and choice of equipment violated Commission rules and damaged plaintiff's equipment. As defendant correctly notes, the *Sheffler* plaintiffs argued the damages were not merely caused by service interruptions but by the utility's inadequate planning and infrastructure. *Id.* ¶¶ 4-5. Similarly, plaintiff here seeks compensation for defendant's

allegedly inadequate service due to its choice of design and equipment. The *Sheffler* court determined a complaint based on allegations concerning a utility's infrastructure and provision of electrical services and seeking relief based on defects in the provision of electrical services or the repair of those services following a power outage was a complaint for reparations within the exclusive jurisdiction of the Commission. *Id.* ¶ 56. In support of its argument, plaintiff cites *Durica v. Commonwealth Edison Co.*, 2015 Il App (1st) 140076, 30 N.E.3d 499. We find *Durica* distinguishable because the plaintiffs' claims in that case did not relate to the utility's failure to provide adequate services. *Id.* ¶ 41. Indeed, the *Durica* court distinguished *Sheffler* on this basis, stating "[plaintiffs] do not allege that they were overcharged by ComEd or that ComEd failed to provide adequate electricity services. Rather, they allege that ComEd trespassed upon their property and seek to recover civil damages in tort, not reparations for rate overcharges or inadequate service. Thus, the holding of *Sheffler* that the [Commission] has jurisdiction over complaints seeking reparations for inadequate service does not compel exclusive [Commission] jurisdiction in this case." *Id.*

¶ 25        Plaintiff further attempts to distinguish *Sheffler* by pointing out the plaintiffs in that case did not allege any violations of the National Electrical Safety Code. Plaintiff argues the Commission adopted various provisions of the National Electrical Safety Code as its rules and defendant violated those rules. 83 Ill. Adm. Code 305.20 (2003). Plaintiff asserts that, "pursuant to the Public Utilities Act, [defendant] is liable for *all* loss, damages, or injury to [p]laintiff caused by [defendant's] violations." (Emphasis in original). However, *Sheffler* made it very clear that "courts focus on the nature of the relief sought rather than the basis for seeking relief in determining whether an action falls within the jurisdiction of the Commission." *Sheffler*, 2011 IL 110166, ¶ 50. Here, plaintiff seeks damages for inadequate service and power outages,

including expenses associated with outages and the hours it spent dealing with repeated outages. While defendant may have violated the Commission's rules, the nature of the relief plaintiff seeks falls within the jurisdiction of the Commission.

¶ 26　　　We conclude *Sheffler* applies in this case, where plaintiff's claims concern the adequacy of defendant's service and fall within the Commission's jurisdiction. Accordingly, the trial court properly determined it lacked jurisdiction over plaintiff's claims and granted defendant's motion for summary judgment. As we have determined the court properly granted defendant's motion for summary judgment because plaintiff's claim was barred by the utility tariff and the Commission had exclusive jurisdiction, we need not address the court's decision based on the economic-loss doctrine. Therefore, we affirm the judgment of the trial court.

¶ 27　　　　　　　　　　　III. CONCLUSION

¶ 28　　　For the reasons stated, we affirm the trial court's judgment.

¶ 29　　　Affirmed.